**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TERRENCE H.,**[1] | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | **No. 23 C 17091** |
| | **)** | |
| v. | **)** | **Magistrate Judge Jeffrey Cole** |
| | **)** | |
| **MARTIN J. O'MALLEY,** | **)** | |
| **Commissioner of Social Security,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, over three years ago in June 2021. (Administrative Record (R.) 190-91). He claimed that he had been disabled since August 24, 2020 (R. 190, 219) due to "Cervical & lumbar epidural abscesses resulting in dense, Loss of strength of both upper extremities." (R. 207). Plaintiff's application was denied at the initial and reconsideration levels, but granted in part at the administrative law judge (ALJ), and appeals council levels. It is the most recent ALJ's decision – which found plaintiff disabled as of January 25, 2023, but not before – that is before the court for review. *See* 20 C.F.R. §§ 404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on December 27, 2023, and the parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c) on January 12, 2024. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

## I.

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments: cervical and lumbar spine degenerative disc disease. (R. 19). The ALJ also found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 20).

The ALJ then determined that the plaintiff was able to perform work with a laundry list of restrictions:

> the [plaintiff] has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in the total amount of time he is able to sit, stand or walk throughout an 8 hour workday. The [plaintiff] needs to alternate his position such that he sits for no more than 5 minutes after standing and walking for 30 minutes. While doing so, he would not need to be off task. His ability to sit is unimpaired. The [plaintiff] can occasionally climb ramps and stairs, and he can occasionally stoop, kneel, balance, crouch and crawl, but he can never climb ladders, ropes or scaffolds. He should not be required to perform more than occasional neck rotation. The [plaintiff] can perform fine and gross manipulation frequently but not constantly, and is incapable of forceful grasping or torquing. He is not capable of working where he would be exposed to excessive vibration. The [plaintiff] is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights, and he should avoid concentrated exposure to unguarded hazardous machinery. The [plaintiff] can understand, remember and carry out simple instructions and can use judgment to make simple work-related decisions.

(R. 20). The ALJ summarized the plaintiff's allegations. The ALJ noted that the plaintiff said he had worked as an auto mechanic until he had spine and neck surgery, after which he was unable to return to work. He has pain in his lower back and neck. He could no longer sit or stand for long, and could not bend due to back pain and lack of strength. The plaintiff said he could stand for five minutes before he had to change position, and could sit for 15 minutes before he had to stand up or

change position.  He could walk about three houses before he has to stop.  He could lift a gallon of milk. He said he had reduced feeling in his left leg.  He said he could not write well due to a right hand tremor and often dropped things. He was able to do minimal household chores and explained that his nephew helps him grocery shop, and that he uses a cart for balance. The plaintiff could drive but only short distances because his back gets sore and he has limited range of motion of the neck on the left. (R. 21).  The ALJ found that the plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to January 25, 2023."  (R. 21).

The ALJ then reviewed the medical evidence, noting that in August 2020 diagnostic studies showed that plaintiff was suffering from spinal epidural abscess from C4-C5 to C7-T1, with severe narrowing of the spinal canal and  abscess areas and right psoas abscess in the lumbar spine. Plaintiff underwent emergency cervical laminectomies from C3-C7 for evacuation of epidural abscess and lumbar laminectomies at L1-L2 for evacuation of epidural abscesses.  Thereafter, he was noted to have muscle weakness in all four limbs and at both the cervical and lumbar regions as well as encephalopathy and sepsis.  He was hospitalized for over a month for treatment of sepsis and cervical and lumbar epidural abscess with osteomyelitis, followed by occupational and physical therapy.  (R. 21).  Thereafter, he had home nursing services for another month.  (R. 21).

The ALJ noted that, at a post-operative follow-up on October 7, 2020, plaintiff reported improvement but had ongoing numbness and tingling, in the left upper and lower extremities.  He denied gait imbalance and fine motor dysfunction. On examination, plaintiff had 5/5 motor strength in his upper and lower extremities, 5/5 grip strength bilaterally, and steady gait. (R. 21).  At his next

follow-up, plaintiff reported mild neck and back pain, and occasional numbness and tingling in his left lower extremity, which was improving. On exam, the plaintiff again had 5/5 strength in upper and lower extremities but reduced bilateral grip strength at 4+/5 and a mildly antalgic gait. Doctors assessed him as doing "very nicely" status post-surgery and was ready for a course of physical therapy.

On March 16, 2021, the plaintiff reported that he was progressing well through the previous 10 weeks of physical therapy, and had no physical concerns or symptoms. On exam, he had 5/5 strength to bilateral upper and lower extremities, 5/5 grip strength bilaterally, and steady gait. A MRI of the cervical spine showed no evidence for significant central spinal canal or neural foramen stenosis of the cervical spine, and an MRI of the lumbar spine showed findings of the discitis osteomyelitis at the L1-L2 level with abnormal signal more conspicuous on present examination. But it was noted the findings were not entirely specific for active infection and may be explained by the residual of discitis. (R. 22). The ALJ went on to note that plaintiff was discharged from physical therapy on May 6, 2021, after missing four consecutive appointments. The discharge noted indicated that plaintiff had demonstrated significant improvement with balance and gait since his initial visit. At his next follow up on September 7, 2021, the [plaintiff] reported having lower back pain with movement, but noted that his neck was much better with improved range of motion. (R. 22).

The plaintiff had a consultative examination on February 26, 2022. The plaintiff said he experienced weakness and shakiness of his entire body, could not walk more than 20 feet without stopping, and used a cane or walker for ambulation, but did not have one at the examination. He said he had some back pain and generalized tremors. But, aside from reporting some difficulty brushing teeth, the [plaintiff] could perform all other activities of daily living. Examination showed decrease

4

in strength at 4/5 in the bilateral upper and lower extremities. Plaintiff was unable to perform lumbar flexion, or knee squats without support, but there was no loss of sensation, gait was broad-based without an assistive device, and he had full range of motion of all other extremities and of the cervical spine. Diagnosis was diagnosed a history of epidural cervical and spinal abscesses status post-surgical evacuation with postoperative residual weakness as well as ataxia and tremors. During a subsequent telehealth appointment on May 10, 2022, plaintiff said he had improved, but still had significant neck pain with activity or long periods of standing. MRIs were recommended but had been denied by plaintiff's insurance company. (R. 22).

The ALJ then explained that, while the plaintiff continued to experience neck and back pain as well as some numbness of the left lower extremity, the overall medical evidence demonstrated improvement in his impairments since his spine surgery. The ALJ pointed to the consultative examination findings of decreased strength 4/5 in the bilateral upper and lower extremities and decrease in range of motion in lumbar flexion, but otherwise range of motion was within normal limits, and noted that plaintiff did not use an assistive device during examination. The ALJ also noted that plaintiff's counsel explained that by saying that plaintiff only used a cane prolonged walking. Plaintiff reported continued improvement in May 2022, but still had significant neck pain with activity or long periods of standing. The ALJ said he accounted for that in his residual functional capacity with exertional and postural limitations as well as mental limitations to account for allegations of pain. The ALJ summed up by saying that he could not find that the plaintiff's physical and mental impairments and pain prevent him from performing all work. (R. 23).

The ALJ went on to consider the opinions from the state agency consulting doctors, saying he found the "overall persuasive" and consistent with the overall medical evidence of record. They

determined that the [plaintiff] could perform light work, never climb ladders, ropes or scaffolds, but could occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl. The ALJ noted the opinions referred to imaging results, consultative examination findings, operative reports, physical therapy records and treatment notes in support of their determinations, and also considered plaintiff's reports of activities of daily living. (R. 23). The ALJ rejected the opinion from the consultative examiner that the plaintiff had limited ability to stand/walk/lift/carry because of post-surgical weakness and ataxia, but could sit/handle objects without limitation. The ALJ said the doctor had only examined the plaintiff once, "and his report that the claimant is limited in the activities are not specific, nor does he use a function-by-function analysis consistent with the criteria defined in the Social Security Regulations to determine disability." (R. 24).

The ALJ then explained his residual functional capacity finding in detail:

I have considered the [plaintiff]'s testimony of need to change positions from standing/walking due to pain, and find that the [plaintiff] needs to alternate his position such that he sits for no more than 5 minutes after standing and walking for 30 minutes. While doing so, he would not need to be off task. His ability to sit is unimpaired. To account for the [plaintiff]'s ongoing reports of neck and back pain, and limitations in bending and squatting per the record (Exhibit 6F) and testimony, the [plaintiff] can occasionally climb ramps and stairs, and he can occasionally stoop, kneel, balance, crouch and crawl, but he can never climb ladders, ropes or scaffolds. It is reasonable that the [plaintiff]'s back and neck pain could be aggravated at a greater physical/exertional level and with greater postural activities. In consideration of his testimony of limited range of motion of the neck and neck pain complaints, he should not be required to perform more than occasional neck rotation. To account for decreased strength 4/5 of the bilateral upper extremities and his testimony of difficulty with right hand use, the [plaintiff] can perform fine and gross manipulation frequently but not constantly, and is incapable of forceful grasping or torquing. He is not capable of working where he would be exposed to excessive vibration. The [plaintiff] is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights, and he should avoid concentrated exposure to unguarded hazardous machinery. It is reasonable that the [plaintiff]'s back and neck pain could be aggravated with exposure to such environmental conditions in the work setting. Lastly, in consideration of the

[plaintiff]'s back and neck pain, resulting in moderate difficulties in concentration, persistence or maintaining pace, I find the [plaintiff] can understand, remember and carry out simple instructions and can use judgment to make simple work-related decisions.

(R. 23-24).

The ALJ then relied on the testimony of the vocational expert to find that the plaintiff's residual functional capacity would not allow him to perform any of his past relevant work. The ALJ then explained that, as of January 25, 2023 – the date of the administrative hearing – plaintiff was two months short of 55 years old which would put him in the category of advanced age. Given the borderline age situation, the ALJ considered plaintiff of advanced age as of the hearing date, which meant transferability of job skills was an issue at that point. The ALJ then relied on the testimony of the vocational expert to find that, prior to January 25, 2023, plaintiff could perform jobs such as office helper (DOT# 239.567-010) with 93,000 jobs in the national economy; information clerk (DOT# 237.367-018) with 30,000 jobs in the national economy; and mail room clerk (DOT# 209.687-026) with 12,000 jobs in the national economy. (R. 25-26). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits prior to January 25, 2023, but disabled and entitled to benefits thereafter. (R. 26-27).

## II.

The court's review of the ALJ's decision is "extremely limited." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The "substantial evidence" standard is not a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Baptist*

*v. Kijakazi*, 74 F.4th 437, 441 (7th Cir. 2023); *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023). Indeed, it may be less than a preponderance of the evidence, *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.2007), and is only that much "evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023). To determine whether substantial evidence exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Crowell v. Kijakazi*, 72 F.4th 810, 814 (7th Cir. 2023); *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *see also Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)(". . . the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."); *Blakley v. Comm'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009)("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.").

But, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010).

The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir.

2011). While this requirement has been described as "lax," *Crowell*, 72 F.4th at 816; *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008), the Seventh Circuit has also explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Jarnutowski*, 48 F.4th at 774 (". . . the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach that conclusion from the ALJ's analysis."); *but see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek they can hop across with barely a splash. Indeed, the Seventh Circuit's opinion in *Jarnutowski*, 48 F.4th 769, exemplifies this subjectivity. Two judges on that panel felt

the ALJ had not adequately explained aspects of her reasoning while a third judge, dissenting, thought she did, as did the Magistrate Judge who had reviewed the ALJ's decision (by consent) at the district court level. *Donna J. v. Saul*, No. 19 C 2957, 2021 WL 2206160, at *8 (N.D. Ill. June 1, 2021).

Prior to *Sarchet*'s "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court explained that the ALJ had to:

> explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

766 F.2d at 287.

More recently, the Seventh Circuit has again emphasized that all ALJs really need to do is "minimally articulate" their reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). The court has explained "that social-security adjudicators are subject to only the most minimal of articulation requirements." *Warnell*, 97 F.4th

at 1053. *See also Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. May 31, 2024)("... ALJs are 'subject to only the most minimal of articulation requirements'—an obligation that extends no further than grounding a decision in substantial evidence."). So, as ever, "[i]f a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985). The ALJ did enough here.

### III.

While the plaintiff raises a number of problems with the ALJ's decision, in the main, they fall into the "logical bridge" category. First, he argues that the ALJ failed to adequately explain how he got from the evidence to the finding that plaintiff could stand for thirty minutes at a time if he sat for five minutes every thirty minutes. Second, he complains that the ALJ did not provide any explanation of why he would be able to remain on-task while alternating positions. Third, the plaintiff contends that the evidence showed that he would struggle to stand and walk for more than roughly five minutes at a time. Fourth, he argues that the ALJ erred by failing to provide a logical explanation for the manipulative limitations in the RFC assessment. Fifth, the plaintiff asserts that the ALJ erred by failing to properly explain why use of an assistive device was omitted from the RFC. Sixth, the plaintiff complains that the ALJ cursorily summarized his activities of daily living without analyzing them. Seventh, the plaintiff contends that the ALJ also failed to analyze his sister's statement. And, eighth – and finally – the plaintiff complains that the ALJ ignored his strong work history. Given all that, it seems unlikely that plaintiff failed to raise any other possible arguments against the ALJ's decision but, if he did fail to do so, those arguments are deemed waived. *See Milhem v. Kijakazi*, 52 F.4th 688, 693 (7th Cir. 2022)("Arguments not raised in the district court

11

are waived."); *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020)("... arguments omitted before the district court are [waived].").

## A.

The first complaint the plaintiff has is the ALJ's determination that he could stand or walk for thirty minutes if he sat for five minutes after that. According to the plaintiff, "[t]hat finding was simply suspended over air—the decision was silent on why sitting for five minutes after 30 minutes of standing and walking was sufficient rather than, say, sitting for ten minutes after every 15 minutes of standing and walking." [Dkt. #14, at 3-4]. "Suspended over air" is a bit of an exaggeration. The ALJ explained that the plaintiff "said he could stand for five minutes before he has to change position, and can sit for 15 minutes before he has to stand up or change position" (R. 21), and that he "considered the [plaintiff]'s testimony of need to change positions from standing/walking due to pain, and find that the [plaintiff] needs to alternate his position such that he sits for no more than 5 minutes after standing and walking for 30 minutes." (R. 23). The ALJ also went through all the medical evidence and explained that examination reports noted that plaintiff was improving throughout treatment with exams showing near normal strength and normal range of motion in all extremities, as well as a normal range of motion in the cervical spine. The only abnormal finding was lumbar flexion, which was reduced. (R. 23). The ALJ also noted that the plaintiff reported that neck pain arose after longer periods of standing. (R. 23).

That's a decent enough explanation – certainly a lot better than "suspended over air" – especially if one recalls, as one must, that the Seventh Circuit has been emphasizing and re-emphasizing that "ALJs are subject to only the most minimal of articulation requirements – an obligation that extends no further than grounding a decision in substantial evidence." *Morales*, 104

F.4th at 971; *see also Warnell*, 97 F.4th at 1053. The ALJ discussed the medical evidence and the plaintiff's allegations and, as is most often the case in these proceedings, had to come up with an amalgam of all those data pints and arrive at a conclusion. The plaintiff might not agree with the conclusion – he seems to think the same evidence should lead to a result that he must sit for ten minutes after every fifteen minutes – but that's how "substantial evidence" review works. *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024)("If substantial evidence supports the ALJ's conclusions, the court must affirm the ALJ's decision even if reasonable minds could differ about the ultimate disability finding."); *Tutwiler*, 87 F.4th at 859 (7th Cir. 2023)("Reasonable minds could disagree with the ALJ's appraisal of this conflicting evidence. Yet judicial review is not designed for appellate judges looking at a transcript to re-weigh conflicting evidence.").

The plaintiff has a similar issue with the ALJ's determination that he could sit down for five minutes every thirty minutes and stay on task. There's no evidence to suggest the plaintiff would be off task while sitting. The plaintiff submits only that because the ALJ found him limited to carrying out simple instructions to account for moderate difficulties in concentration resulting from his back and neck pain (R. 23), it must be the case that he cannot concentrate at all while sitting. [Dkt. #14, at 4].[2] Why? If the plaintiff can concentrate adequately to carry out simple instructions while standing, why not while sitting? The jobs the vocational expert found the plaintiff could do "allow flexibility between sitting and standing at the workstation or that have alternate posture tasks." (R. 55-56). No doctor – not any of the plaintiff's doctors, nor the state agency reviewing

---

[2]The plaintiff actually argued that "the ALJ found that [plaintiff's] ability to perform complex tasks was precluded, *presumably* due to his pain. (AR 20.)" [Dkt. #14, at 4 (emphasis added)]. Thus, the plaintiff seemingly missed the portion of the ALJ's decision where the ALJ specifically linked the restriction to carrying out simple instructions to back and neck pain.

physicians, nor the consultative examiner – said anything suggesting that the plaintiff could not stay on task while sitting. *See Durham v. Kijakazi*, 53 F.4th 1089, 1096 (7th Cir. 2022)(rejecting plaintiff's argument that the ALJ failed to provide "any ... time off task to address" her impairments because the "burden was on [the plaintiff] to . . . come forward with medical evidence to establish that her [impairments] . . . required any limitations beyond those set forth by the ALJ in his hypothetical question."); *see also Brian C. v. Kijakazi*, No. 22 C 1447, 2023 WL 4564564, at *9 (N.D. Ill. July 17, 2023)("Ultimately, [plaintiff] bore the burden of establishing that he required a greater sit-stand limitation with more off-task time."); *Gale L-S v. Kijakazi*, No. 21 C 6874, 2023 WL 2746003, at *6 (N.D. Ill. Mar. 31, 2023)("Ultimately, [plaintiff] bore the burden of establishing that she required breaks and an off-task accommodation."); *Juozas V. v. Kijakazi*, No. 20 C 3692, 2023 WL 2646735, at *5 (N.D. Ill. Mar. 27, 2023)("It was Plaintiff's burden to show that his impairments would keep him off task, and the ALJ did not find any such limitations supported by the evidence."); *Ricardo M. v. Kijakazi*, No. 19 CV 6802, 2022 WL 4356892, at *4 (N.D. Ill. Sept. 20, 2022)(it is plaintiff's burden to "point to any other evidence in the record suggesting he would be off task a greater percentage of time."); *Charmaine R. v. Saul*, No. 18 C 7955, 2021 WL 83737, at *5 (N.D. Ill. Jan. 11, 2021)("Plaintiff's argument appears to put the burden on the ALJ to establish whether she would be off task, and if so, for how long, which is improper, because the burden of proving she is disabled always rests with Plaintiff.").

The plaintiff submits that the medical evidence, including 4/5 strength in the hip, knee, and ankle, reduced lumbar spine range of motion, and an MRI showing moderate disc bulge and central canal stenosis at L4-5, moderate disc protrusion at L5-S1, displacement of both traversing nerve roots of S1, and moderate facet arthropathy at L3-4, dictated a finding that he would struggle to

stand and walk for more than roughly five minutes at a time. [Dkt. #14, at 5]. But, again, none of the plaintiff's doctors said as much. They reported rather consistent findings of normal or near normal strength in upper and lower extremities and grip as plaintiff progressed following surgery:

> September 1, 2020 – Strength RUE 4+/5 throughout; Strength LUE 4-/5 throughout; Strength RLE 4+/5 throughout; Strength LLE 4+/5 IP/quad, DF/PF, except L ham -4/5 (R. 590).

> September 2, 2020 – Musculoskeletal: bue ~4/5 strength. rle 4/5, lle 4/5, decreased range of motion left upper extremity (R. 611).

> September 4, 2020 – Strength RUE 4+/5 throughout; Strength LUE 4-/5 throughout; Strength RLE 4+/5 throughout; Strength LLE 4+/5 IP/quad, DF/PF, excpet L ham -4/5 (R. 638).

> October 7, 2020 – Maintains 5/5 strength to bilateral upper and lower extremities Grip strength 5/5 bilaterally (R. 436).

> October 20, 2020 – Maintains 5/5 strength to bilateral upper and lower extremities Grip strength 5/5 bilaterally (R. 435).

> November 19, 2020 – n. Strength is 5/5 in upper and lower extremities except in bilateral grip strength which is graded 4+/5. Mildly antalgic (R. 433).

> January 15, 2021 – Strength upper extremities, hand, and wrist: 4/5-5/5 (R. 417)

> February 26, 2022 – Grip strength is normal. Strength is 4/5 in the right upper extremity. Strength is 4/5 in the left upper extremity. Strength is 4/5 in the right lower extremity. Strength is 4/5 in the left lower extremity (R. 1094)

> March 16, 2021 – Maintains 5/5 strength to bilateral upper and lower extremities Grip strength 5/5 bilaterally (R. 424).

Those types of findings might not lead inexorably to a finding that plaintiff can do light work, but they certainly do not paint a picture of someone who is unable to alternately stand for thirty minutes, and sit for five.

Plus, the two reviewing physicians looked at this same evidence (R. 64, 67, 73)[3], and came up with a very different reading of it than the plaintiff espouses. They both felt that the plaintiff could stand and/or walk (with normal breaks) for a total of about 6 hours in an 8 hour workday, and sit (with normal breaks) for a total of about 6 hours in an 8 hour workday (R. 66, 72). The ALJ found these opinions persuasive overall, noting that they were supported by references to the medical record including the studies the plaintiff refers to. (R. 23).[4]

Again, the combination of all those considerations constitutes "substantial evidence" to support the ALJ's decision. Could it also support a different decision? Yes. A person with the plaintiff's clinical studies might not be able to perform the limited range of light work the ALJ found plaintiff capable of. But, that same medical evidence does not necessarily rule out a limited range of light work. *Cf. Gedatus*, 994 F.3d at 903 (7th Cir. 2021)(". . . the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence."). As such, what the ALJ made of the evidence here does not set off any common-sense alarm bells.

---

[3] The MRI the plaintiff refers to in his brief was taken on February 9, 2021 (R. 904-05), not in March 2021 as the plaintiff submits. [Dkt. # 14, at 5]. The court points this out because the plaintiff's misdating of the study might give the impression that the reviewing physicians had not considered it as they listed no March 2021 MRI among the reports they considered.

[4] The consultative examiner offered the only somewhat contrary opinion in the record. He said that the plaintiff's "ability to perform activities such as stand, walk, lift, and carry is limited because of post-surgical weakness and ataxia" (R. 1095), but the ALJ rejected that opinion as non-specific and devoid of a function analysis of the capacity for work. (R. 24). It's worth pointing out that, the consulting physician's examination findings were rather unremarkable in the main. He said the plaintiff's range of motion was "full, free and painless" in all extremities and in the cervical spine. Strength in all extremities was 4/5, and grip strength was normal. The only abnormal finding was that plaintiff could not perform lumbar flexion. (R. 1094). *See, e.g., Leisgang v. Kijakazi*, 72 F.4th 216, 221 (7th Cir. 2023)(ALJ may reject a doctor's opinion when it is contradicted by the doctor's own findings); *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019); *Skarbek v. Barnhart*, 390 F.3d 500, 503–04 (7th Cir. 2004).

Plaintiff submits that the ALJ ought to have provided more of a narrative explanation of how he came up with his RFC than the one he provided at pages 23-24 which, of course, was augmented by the ALJ's discussion of the evidence throughout his opinion. *See, e.g., Grotts*, 27 F.4th at 1278; "An ALJ need not discuss every detail in the record as it relates to every factor. . . .Summaries of medical evidence, while definitionally 'partial and selective,' are appropriate."); *Gedatus*, 994 F.3d at 901 (7th Cir. 2021)("But if [the plaintiff] is complaining that the ALJ summarized the medical evidence, that is unavailing because summaries are appropriate."). What the ALJ provided has demonstrated that he considered the evidence, did not ignore any significant evidence, and allows for meaningful review. *See, e.g., Warnell*, 97 F.4th at 1054 ("All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review."). It's unclear what more of a discussion, narrative or otherwise, plaintiff wants.[5]

### B.

The plaintiff also has an issue with the ALJ's finding that he was limited to frequent – one third to two thirds of each workday – fine and gross manipulation frequently and forceful grasping or torquing. [Dkt. #14, at 7]. As the plaintiff concedes, the ALJ tied his restriction to frequent manipulation to clinical findings of no less than 4/5 grip strength. (R. 21-22, 23). Again, it's difficult to see what more of an explanation the plaintiff wants. If normal grip strength would mean no

---

[5] The court is not faulting the plaintiff for being unable to explain what an adequate "logical bridge" or "narrative" might look like in this case. The "logical bridge" concept has always been elusive, one of those "I know it when I see it" types of standards. One need look no further than *Jarnutowski, supra,* to see that.

restriction, why wouldn't grip strength findings of 4/5, 4+/5, and 5/5 – the readings throughout the plaintiff's medical record – allow for a one-third of a day reduction? Again, the plaintiff offers little or no medical evidence to show a greater manipulation restriction was necessary[6], and it is his burden to do so. *See, e.g., Durham*, 53 F.4th at 1096 (noting that the claimant bore the burden of establishing that her impairments required limitations beyond those set forth by the ALJ); *Gedatus*, 994 F.3d at 905 ("Besides, [plaintiff] has not pointed to any medical opinion or evidence to show any tremors caused any specific limitations."); *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017)(plaintiff "offered no evidence that . . .necessitated additional functional restrictions beyond those already incorporated in the RFC."). And, he offers no medical opinion to support a greater restriction either. *See, e.g., Moyer v. O'Malley*, No. 23-2599, 2024 WL 1411565, at *3 (7th Cir. Apr. 2, 2024)("An ALJ does not err in assigning a residual functional capacity if there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ."); *Tutwiler*, 87 F.4th at 860 ("Also, [plaintiff] did not provide any opinion from a doctor who would have imposed greater restrictions than those the ALJ found in his decision. . . . The lack of an opposing medical opinion makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal."); *Gedatus*,  994 F.3d at 904 ("A fundamental problem is [the plaintiff] offered no opinion from any doctor to set sitting limits, or any other limits, greater than those the ALJ set.").

The plaintiff makes one additional argument along these lines, which we need not spend

---

[6] Plaintiff points to physical therapy assessments from September 2020 (R. 1146) which indicated he had "hand ROM/Strength" within normal limits, but at the same time showed grip strength was significantly reduced. [Dkt. #14, at 8]. Given the findings of 4/5, 4+/5, 5/5 grip strength throughout the rest of the record, this isolated report is not enough to carry the plaintiff's burden of establishing a need for greater restrictions than the ALJ found.

much time on. The plaintiff complains that the ALJ failed to properly explain why use of an assistive device was omitted from the RFC. [Dkt. #14, at 10]. According to the plaintiff's reading of the ALJ's Opinion, the ALJ based his conclusion solely on the fact that the plaintiff did not have a cane with him when he went to his consultative examination. [Dkt. #14, at 10]. If that were true, the ALJ's point would seem to have been valid. If you don't need a cane to attend a medical examination set up for the sole purpose of assessing your eligibility for disability benefits, it would seem to be logical for an ALJ to find it was not a medical necessity. There's a little "logical bridge" right there.

But, actually, the plaintiff's argument here seems based on a somewhat careless reading of the ALJ's opinion. As the ALJ clearly explained, at the hearing, plaintiff's counsel "acknowledged the claimant uses the cane for *prolonged* walking." (R. 23)(Emphasis supplied). Indeed, when the ALJ asked counsel about the need for a cane, counsel said plaintiff only needed it for "walking great distances." (R. 53). To now raise the argument that a cane is needed beyond that is a bit concerning, although it should be noted that the plaintiff had a different representative at the hearing than now.[7] In any event, the argument is a non-starter.

## C.

The plaintiff next argues that the ALJ failed to adequately analyze his daily activities. The ALJ summarized the plaintiff's allegations (R. 21) – again, summaries are appropriate – and went

---

[7] The tag-team system of attorney representation that is common with Social Security disability cases tends to cause problems in the category of "sandbagging," whether intentional or unintentional. *See, e.g., Joseph M. v. Kijakazi*, No. 23 C 0088, 2023 WL 7167523, at *10 (N.D. Ill. Oct. 31, 2023); *James E. v. Berryhill*, 357 F. Supp. 3d 700, 703 (N.D. Ill. 2019); *Jody W. v. Berryhill*, No. 17 CV 50290, 2019 WL 652247, at *5 (N.D. Ill. Feb. 15, 2019); *Wright v. Kijakazi*, No. 1:21-CV-58-JPK, 2022 WL 4592018, at *13 (N.D. Ind. Sept. 30, 2022).

on to assess those allegations in light of the medical evidence. That evidence showed improvement over the course of treatment and, as already noted, near normal findings in terms of extremity strength and range of motion, and grip strength. (R. 21-23). And, the ALJ returned to those allegations when explaining his reasoning for his RFC finding. (R. 23-24).

Indeed, plaintiff's own reports to his doctors at those examinations and his doctors' comments were not so dire as his allegations suggest:

> October 7, 2020 – He does note some ongoing numbness and tingling to his left upper and lower extremities, which he states continues to improve. . . . He denies gait imbalances and fine motor dysfunction. (R. 436). Overall, he continues to improve. We discussed his cervical x-ray which is stable between flexion/extension views. . . . He will continue with activity restrictions and continue the cervical collar use until his evaluation with Dr. Karahalios. (R.437)

> October 20, 2020 – Today, he feels well. Increasing strength in his upper and lower extremities. Was able to open a soda bottle with ills hands today. He is walking with a 4 wheel and feels better. No fever, chills, sweats, or back pain.. . . No nausea, emesis, diarrhea, or rashes noted. ROS otherwise negative (R. 1171)

> November 4, 2020 – He states overall he is doing better and is no longer using a walker for ambulation. He describes some ongoing left sided low back pain but feels the pain is tolerable with OTC medications. He did not follow up with Pain Management for any refills of his pain medications. . . . He had some questions in regards to returning to work as a mechanic. I said likely we would start more extensive PT/O. (R. 433-34)

> November 19, 2020 – Overall, he is doing well postoperatively. He reports mild neck and back pain. He denies any radicular pain. He occasionally has numbness and tingling in his left lower extremity which is improving. He denies any new weakness. He denies changes to bowel or bladder. . . . His symptoms are markedly improved as compared to his preoperative status. . . Strength is 5/5 in upper and lower extremities except in bilateral grip strength which is graded 4+/5. He walks with a mildly antalgic gait. Negative Hoffman's. Negative Homan's. (R. 433).

> November 24, 2020 – Strength and mobility have improved. Back pain improved. (R. 1111)

> May 10, 2022 – Continues to have improvement but still has significant neck pain

with activity or long periods of standing. No fevers, weight changes, low back pain. (R. 1103).

March 2, 2021 – Reports his strength has improved. (R. 1109).

March 16, 2021 – Overall, he is doing well. He notes he has been participating in physical therapy for the past 10 weeks and feels he is progressing well. He continues to take amoxicillin per his infectious disease doctor. He notes he is somewhat anxious today as he drove from South Elgin and "has a long drive back home." He denies pain and pain medication use . . . He denies gait imbalances and fine motor dysfunction. . . . Overall, he is doing well. We discussed his MRI imaging, which was reviewed by Dr. Karahalios and noted improvements from his prior imaging. (R. 425, 427).

In light of the medical evidence, the ALJ credited a portion of the plaintiff's allegations about limits on his activities, but discarded others that he explained were not supported. *See, e.g., Streikus v. O'Malley*, No. 22-2484, 2024 WL 983568, at *4 (7th Cir. Mar. 7, 2024)(ALJ need only incorporate functional limitations supported by the medical record); *Durham*, 53 F.4th at 1096 ("But the ALJ left out such limitations because she determined that they were not supported by the medical record."); *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021)(ALJ properly "left out . . . limitations because she determined that they were not supported by the medical record."). I must respectfully disagree with the plaintiff's suggestion that the ALJ somehow failed to recognize the differences between activities of daily living and the demands of full time work. [Dkt. #14, at 12 (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). There is no indication in the Opinion that the ALJ did that. Similarly, the ALJ also considered the statement from the plaintiff's sister and gauged it against the medical record. Contrary to the plaintiff's insinuation with a citation to *Garcia v. Colvin*, 741 F.3d 761 (7th Cir. 2013), the ALJ clearly did not reject plaintiff's sister's statement because of "the potential for bias attributable to their relationship." 741 F.3d at 761.Cir.

2013). And, it's not a case where the ALJ failed to make "clear whether he believed the . . . testimony or not, or which part he believed, or whether he had no idea how much of what she said was worthy of belief." 741 F.3d at 761.

Finally, the plaintiff argues that the ALJ should have considered his work history. But, as the plaintiff concedes, he was not obligated to do so. Work history is just one factor among many, and it is not dispositive, nor does it operate to negate other evidence that supports an ALJ's adverse credibility finding. *Prill v. Kijakazi*, 23 F.4th 738, 747 (7th Cir. 2022); *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). The balance of the ALJ's decision was thorough and well-reasoned, and his conclusion that plaintiff was not disabled from August 2020 to January 2023 was supported by "substantial evidence."

### D.

In the thirty years since *Sarchet*, one has had to wonder, from time to time, whether "logical bridge" was an unfortunate choice of metaphor. It conjures up something rather substantial and impressive, certainly more impressive than the "minimal articulation," which the Seventh Circuit seems to have expressed a preference for more recently. *See, e.g., Morales*, No. 23-2796, 2024 WL 2794055, at *1; *Warnell*, 97 F.4th at 1053. Magistrate judges don't see a lot of plaintiff's briefs where counsel argue repeatedly that the ALJ failed to 'minimally articulate" something – with good reason because that sounds like an easy standard to meet. No, plaintiff's briefs are all about building "logical bridges," which does sound like more work for an ALJ and makes for a better sounding argument. And, from time to time, the "logical bridge" reference does seem to put the "substantial evidence" standard out of view. *See, e.g., Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021)(rejecting plaintiff's argument that more of an explanation was required because "the "logical

22

bridge" language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard.").

This case seems to be one where the metaphor got in the way. As one can see from the foregoing lengthy discussion, there is evidence going both ways. The record, arguably, allows for more than one interpretation. When that is the case, the "substantial evidence" standard requires the ALJ's view to be upheld. *McGillem v. Kijakazi*, No. 20-2912, 2022 WL 385175, at *1 (7th Cir. Feb. 8, 2022)("Although this is a close case, we conclude that substantial evidence supports the ALJ's decision, and so the applicable standard of review compels us to affirm."); *Zoch*, 981 F.3d at 602 ("... even if reasonable minds could differ on the ALJ's rejection of [plaintiff's allegations] testimony, we will not reweigh evidence or substitute our judgment for the ALJ's."); *Karr*, 989 F.3d at 513 (same); *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019)("Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled'."); *Johnson v. Berryhill*, 745 F. App'x 247, 251 (7th Cir. 2018)("Resolving the conflicting evidence about such a close case, in which subjective pain is so critical, is a job for the ALJ in the first instance. The ALJ's decision in this case was reasonable, even if others could look at the same evidence and reach a different conclusion."); *Kasberger v. Astrue*, No. 06-3868, 2007 WL 1849450, at *4 (7th Cir. June 27, 2007)("The case before the ALJ could have plausibly come out the other way. Yet that in itself is not enough for us to upset the ALJ's decision, because the substantial evidence standard carries with it a zone of choice within which the decisionmakers can go either way, without interference from the courts."). Accordingly, the ALJ's decision here is affirmed.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. #15] is granted, and the plaintiff's motion for reversal and remand of the ALJ's decision [Dkt. #14] is denied.

**ENTERED:** _____

**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 8/15/24